IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHERINE L. E.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

    Defendant.

Case No. 3:17-cv-01585-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Catherine E. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

# BACKGROUND

Born in 1955, plaintiff alleges disability beginning November 15, 2010,[2] due to fibromyalgia, hepatitis C, back pain, migraines, chronic fatigue, and depression. Tr. 36-37, 144-45, 164. On June 24, 2016, the ALJ issued a decision finding plaintiff not disabled prior to the date last insured ("DLI") of December 31, 2011. Tr. 18-28. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

# THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity "from her amended alleged onset date of November 15, 2010 through her DLI of December 31, 2011." Tr. 20. At step two, the ALJ determined plaintiff's fibromyalgia, degenerative disc disease of the lumbar spine, right carpal tunnel release, and left carpal tunnel syndrome were medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 22.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she: "is able to occasionally climb stairs and ramps but should never climb ladders, ropes, and scaffolds"; "can occasionally balance, stoop, kneel, crouch, and crawl"; and "will need an assistive device for ambulation [and] can frequently handle and finger bilaterally." Tr. 22.

---

[2] Plaintiff initially alleged disability as of January 27, 2006, but amended her onset date at the hearing to coincide with her 55th birthday. Tr. 36-37, 144.

At step four, the ALJ determined plaintiff was capable of performing her past relevant work as a unit coordinator. Tr. 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to find her depression and obesity as medically determinable at step two; (2) rejecting the medical opinion of treating doctor Kimberly Kisor, M.D., and (3) discrediting her subjective symptom testimony.

### I. Step Two Finding

Plaintiff contends the ALJ erroneously omitted her depression and obesity as medically determinable impairments. At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence, such as "signs, symptoms, and laboratory findings." SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. § 404.1513(a). An impairment is severe if it significantly limits the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521; Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

As a preliminary matter, plaintiff did not include obesity as one of her allegedly disabling impairments in applying for benefits, nor did she ever seek treatment for any obesity-related symptoms. Tr. 164, 228-799. As a result, plaintiff's entire argument as to this issue is premised on medical evidence demonstrating that, at 5' 5" tall and approximately 200 pounds, she qualified as mildly obese. Pl.'s Opening Br. 13 (doc. 12).

Regarding plaintiff's remaining step two challenge, the record contains few references to depression, all but one of which transpired outside of the adjudicative period. In January 2006, more than four years prior to the amended alleged onset date, plaintiff presented to her general practitioner with feelings of depression due to her ongoing physical impairments and stressful work environment. Tr. 464. She was diagnosed with depression at that time and prescribed Celexa. Tr. 465. During late 2006 and early 2007, plaintiff continued to report depression and obtained psychiatric counseling; she was tapered off Celexa due to weight gain and started on a new medication regime. Tr. 52-53, 399, 409, 411, 414-16, 418-19. By mid-2007, Dr. Kisor noted that plaintiff's depression was "stable" and she encouraged plaintiff to continue on her current mental health medications, which were generally effective. Tr. 380, 389. Except for a single instance in March 2009, plaintiff thereafter did not report any mental health symptoms or seek any mental health treatment until immediately prior to the DLI. Tr. 325-68.

Specifically, in December 2011, plaintiff presented to Dr. Kisor complaining of nausea and bladder problems; she also reported being "[v]ery depressed for some reason." Tr. 325. Dr. Kisor did not perform a formal diagnostic assessment or otherwise note any signs or symptoms, but nonetheless listed "DEPRESSION, MAJOR, SINGLE EPISODE," as a diagnosis. Id. The doctor did not refer plaintiff to counseling or any other psychiatric treatment, and plaintiff did not again report any depressive symptoms until her son passed away in December 2012. Tr. 306, 312-25. Plaintiff did not reinitiate mental health counseling until April 2016. Tr. 52.

At step two, the ALJ thoroughly summarized medical evidence pertaining to plaintiff's physical and mental impairments, and found that plaintiff's fibromyalgia, degenerative disc disease of the lumbar spine, right carpal tunnel release, and left carpal tunnel syndrome were medically determinable and severe. Tr. 20-22. As such, "[a]ny alleged error at step two was

harmless because step two was decided in [plaintiff's] favor with regard to other ailments." Mondragon v. Astrue, 364 Fed. Appx. 346, 348 (9th Cir. 2010).

Although the ALJ did not address plaintiff's obesity, he did discuss her depressive disorder. Tr. 21. In finding it not medically determinable, the ALJ denoted plaintiff "had no psychiatric evaluation, therapy, counseling or pharmacological management between 2009 and 2012," and that "mini psychiatric evaluation[s] by Dr. Kisor and other specialists did not reveal any mental limitations [or] behavioral, memory, or cognitive deficits from 2009 through 2012." Tr. 21-22. The ALJ also considered the reports of the state agency consulting sources, who "found no sufficient evidence to evaluate [plaintiff's] allegations of affective disorder."[3] Tr. 22.

Thus, as the ALJ reasonably determined, plaintiff's depression had essentially resolved or stabilized years prior to the dispositive time-frame, and the single reference to an unspecified depressive episode weeks prior to the DLI is insufficient to meet the durational requirements for a medically determinable impairment. 20 C.F.R. § 404.1509. In other words, the ALJ did not err in failing to address plaintiff's depression in evaluating disability between November 15, 2010, and December 31, 2011, at subsequent steps of the sequential process. The fact that plaintiff resumed mental health treatment more than four years after the DLI lapsed does not alter this Court's analysis.

---

[3] Because plaintiff had not amended her alleged onset date at the time the state agency doctors reviewed the record, they were evaluating her claim from January 2006 forward and therefore resolved that plaintiff's depression was medically determinable. Tr. 62-66, 72-78. Nevertheless, due to the lack of treatment records regarding this impairment, they concluded there was "insufficient evidence" to determine functional limitations associated with plaintiff's mental impairment. Tr. 66, 78. As plaintiff acknowledges, the record does not contain any diagnosis of depression between 2009 and 2013. Pl.'s Opening Br. 12 (doc. 12). As such, the state agency consulting sources' opinions regarding the existence of a medically determinable mental impairment beginning in 2006 is not probative given the timeframe at issue on appeal.

Page 5 – OPINION AND ORDER

Regardless, even assuming plaintiff met her burden in establishing obesity and depression as medically determinable impairments, remand on this issue is inappropriate. Plaintiff does not detail what restrictions flow from these conditions, despite the fact that the Commissioner expressly noted this deficiency in plaintiff's opening brief. Pl.'s Opening Br. 12-13 (doc. 12); Pl.'s Reply Br. 3-5 (doc. 20); see also Justice v. Rockwell Collins. Inc., 117 F.Supp.3d 1119, 1134 (D. Or. 2015), aff'd, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). Because plaintiff neglected to meaningfully address how the ALJ's error in assessing her obesity and depression was harmful, and it is not apparent to this Court, there is no indication that plaintiff's RFC should have been more restrictive in light of these conditions. See McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (burden of establishing that an error is harmful falls on the party attacking an administrative agency's decision); Hoopai v. Astrue, 499 F.3d 1071, 1076-87 (9th Cir. 2007) (mild mental impairments need not be accounted for in the claimants' RFC); see also Tr. 52-53 (plaintiff testifying at the hearing that she was having "more [problems with] just the mental issues that relate to chronic pain and chronic fatigue," as opposed to depression, in 2010 and 2011).

In sum, even if the ALJ erred in failing to address plaintiff's obesity and finding her depression non medically determinable, such an error was harmless because it was "nonprejudicial to the claimant [and] irrelevant to the ALJ's ultimate disability conclusion." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.2006). Therefore, reversal is not warranted in this regard.

## II. Medical Opinion Evidence

Plaintiff argues the ALJ improperly discredited Dr. Kisor's opinion. At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

Plaintiff established care with Dr. Kisor in March 2007 and continued to be treated by her through the date of the hearing. Tr. 399. In September 2014, Dr. Kisor completed a "Fibromyalgia Medical Source Statement" prepared by plaintiff's attorney. Tr. 645-48, 700. Dr. Kisor denoted plaintiff had been diagnosed with fibromyalgia, lumbar disc disorder, and sacroiliitis for which she provided treatment "twice a year at least." Tr. 635. In terms of functional limitations, Dr. Kisor checked boxes reflecting plaintiff could: sit for more than two hours at a time and at least six hours total in an eight hour day; stand for ten minutes at a time and less than two hours in an eight hour day; rarely lift ten pounds or less and never lift twenty pounds or more; and never twist, stoop, crouch, or climb ladders or stairs. Tr. 646-47. The doctor indicated further that plaintiff had no limitations with her hands, fingers, arms, or neck, or with attention and concentration, and was capable of low stress work. Tr. 648.

The ALJ assigned "little weight" to Dr. Kisor's opinion because it was "inconsistent with the record as a whole." Tr. 26. Specifically, the ALJ found that, because Dr. Kisor's opinion was rendered years after the DLI, it "is remote in time and has no significant probative value." Id. In addition, the ALJ reasoned that Dr. Kisor's opinion "is entitled to special preference but does not

Page 7 – OPINION AND ORDER

warrant great weight because it is inconsistent with the mild findings Dr. Kisor documented from June 30, 2009 through May 1, 2012," as well as the other the evidence of record which did not "support the lifting, carrying, standing, and walking limitations Dr. Kisor imposed." Id.

The ALJ may disregard "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Inconsistency with the record is also a proper basis to reject a doctor's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, contradiction between a doctor's opinion and her treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009).

Here, the record supports the ALJ's conclusion. Dr. Kisor treated plaintiff sporadically prior to the DLI. Indeed, as plaintiff acknowledges, Dr. Kisor saw plaintiff five times in the approximately four years leading up to the amended alleged onset date and three times during the period at issue on appeal. Pl.'s Opening Br. 14-15 (doc. 12); see also Tr. 345-47, 352, 360, 380, 389 (pre-alleged onset date appointments); Tr. 325, 332, 337 (treatment from November 15, 2010, through December 31, 2011). In other words, the vast majority of the treatment provided by Dr. Kisor occurred between 2012 and 2014. See, e.g., Tr. 278, 282-83, 287, 289, 294, 306, 313, 316, 318-19, 695, 700, 745, 753; see also Pl.'s Opening Br. 14-15 (doc. 12) (noting plaintiff saw Dr. Kisor "at least fourteen times after her date last insured").

Chart notes from within or around the dispositive timeframe do not reflect a significant disruption in functioning. Tr. 318-19, 325, 332, 337, 345-47. Notably, between March 2010 and May 2012, plaintiff sought treatment for transitory conditions unrelated to her disability claim and twice complained of fibromyalgia flare ups; the record otherwise reflects that her back pain

was stable and medications relatively effective. Id. There is no medical or other evidence from this period indicative of more serious impairment.

Furthermore, Dr. Kisor's opinion was not retrospective – i.e., it did not relate plaintiff's functioning as of September 2014 back to the relevant timeframe. Tr. 645-48. Despite plaintiff's assertion to the contrary,[4] it is well-established that an ALJ may reject a medical opinion, even that of a treating doctor, where, as here, "it was completed . . . years after claimant's date last insured and was not offered as retrospective analysis." Morgan v. Colvin, 2013 WL 6074119, *10 (D. Or. Nov. 13, 2013) (collecting cases). Accordingly, the ALJ's assessment of Dr. Kisor's opinion is affirmed.

## III. Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting her subjective pain testimony regarding the extent of her symptoms during 2010 and 2011. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281 (internal citation omitted).

---

[4] Plaintiff contends Dr. Kisor's opinion was retrospective because the introductory letter her attorney prepared in conjunction with the "Fibromyalgia Medical Source Statement" stated, in part: "Ms. Evans was last insured for Social Security Disability purposes on 12/31/2011. If possible, please give your opinion as to her condition on or before that date." Pl.'s Opening Br. 16; Tr. 650. However, based on its plain language, the "Fibromyalgia Medical Source Statement" was intended to pertain to plaintiff's current functioning. Tr. 645-48. The only question that even arguably invoked an earlier time period was "Have your patient's impairments lasted or can they be expected to last at least twelve months?" Tr. 645. Because this form was completed more than two years after the DLI lapsed, Dr. Kisor's affirmative response to this question does not provide the requisite relation back. Moreover, it is unclear whether Dr. Kisor even considered plaintiff's attorney's introductory letter given that plaintiff hand delivered the "Fibromyalgia Medical Source Statement." Tr. 700. While plaintiff proffers a more favorable reading of the record, because the ALJ's interpretation was reasonable, it must be upheld. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas, 278 F.3d at 959 (internal citation omitted).

At the hearing, plaintiff testified she was unable to work as of her 55th birthday due to "[e]xtreme pain in my lower back and left hip," and fibromyalgia, which caused nausea, headaches, body aches, and chronic fatigue. Tr. 41, 51-52. As a result, plaintiff stated she needed to "lay down often during the day" – i.e., "three to four [times for] an hour or two each time." Tr. 41, 48. Plaintiff explained she was taking, amongst other medications, morphine during 2010 and 2011, which "helped with the pain levels" but made her feel "kind of foggy" and prevented her from multitasking. Tr. 42, 46-47. She also endorsed balance problems and issues related to left-sided carpal tunnel syndrome. Tr. 47-48, 51.

After summarizing her hearing testimony, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to produce some degree of symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record." Tr. 23. Specifically, the ALJ cited to plaintiff's activities of daily living, and the lack of corroborating medical evidence in relation to her medication side-effects, balance problems, and pain. Tr. 23-26.

Turning to the first asserted rationale, the ALJ found that plaintiff "travel[led] long distances," walked her dog, waterskied, and snow skied. Tr. 24. An ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). Yet, in the case at bar, the ALJ mischaracterized plaintiff's daily activities in evaluating her subjective symptom testimony such that this finding is not supported by substantial evidence. Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding).

Significantly, there is no evidence that plaintiff waterskied and snow skied within or around the dispositive timeframe. Rather, the record, when read in context, reflects that plaintiff used to enjoy these activities prior to becoming allegedly disabled. Tr. 188, 238, 324, 415. Moreover, the lengthy travel referred to by the ALJ was actually a cruise – because plaintiff "[c]annot do anything more strenuous than that" – and a visit to her family's "property to spend a week relaxing." Tr. 313, 339, 347. Concerning the latter, plaintiff was unable to depart as planned because she was in pain and needed to arrange a refill of her morphine. Tr. 347. Regardless, these activities are compatible with plaintiff's subjective symptom statements. Likewise, plaintiff's limited pet care is consistent with her hearing testimony and, as such, does not support a negative credibility finding. Tr. 188, 238, 324.

The ALJ also found that the objective medical evidence did not support plaintiff's allegations of disability. Tr. 24-25. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons for finding that testimony un-credible are not supported by substantial evidence. See Brown v. Colvin, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record).

In any event, the ALJ again mischaracterized the record in recounting the objective medical evidence. For instance, the ALJ acknowledged a single report of balance problems during the adjudicative period, yet the record reflects repeated complaints of imbalance and dizziness. Tr. 25, 325, 328, 330-31, 350. Additionally, the ALJ "recognized [plaintiff] used strong pain medications such as Morphine and oxycodone during the relevant period,"[5] and that she reported to Dr. Kisor in January 2011 that these medications were "oversedating." Tr. 23, 337; see also Tr. 329 (plaintiff's Lyrica was discontinued in June 2011 "in an effort to decrease her total number of medications as the feeling was that she was on a lot of medication").

---

[5] Although the ALJ noted plaintiff's usage of strong pain medications, he nonetheless underemphasized her significant medication regime. Namely, plaintiff was taking two 60-mg morphine pills per day, Percocet for breakthrough pain, and a slew of muscle relaxers, antidepressants, and sleeping pills. See, e.g., Tr. 324, 327, 330-31, 343, 349; see also Tr. 294, 398, 436 (evidence from outside the relevant timeframe reflecting medication side-effects). Her doctors subsequently had to decrease her opiate prescription when federal guidelines changed to comply with the safe maximum dose. Tr. 289, 762.

Nonetheless, the ALJ concluded that plaintiff's testimony regarding medication side-effects was not born out by the record.

Finally, the ALJ discredited plaintiff's hearing statements concerning back pain because there was "low grade degenerative disc disease [but] no nerve root compression or irritation," such that "[s]urgical intervention was unwarranted." Tr. 24. The fact that objective medical imaging studies demonstrate "multiple levels of degenerative disc disease," as well as "significant spondylolysis at L5-S1," is noteworthy; courts within this District have been clear that even "mild degenerative disc disease can have disabling effects." Dahl v. Comm'r, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (collecting cases); Tr. 370, 373, 435. In other words, "mild degenerative changes do not necessarily equate to mild functional limitations." Ellefson v. Colvin, 2016 WL 3769359, *6 n.5 (D. Or. July 14, 2016) (reversing the ALJ's credibility finding under analogous circumstances). As a result, it was error for the ALJ to disregard plaintiff's back pain testimony based on her imaging studies.

Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony. The ALJ's decision is reversed as to this issue.

## IV. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant

evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As addressed herein, the ALJ committed harmful legal error by discrediting plaintiff's subjective symptoms testimony. The record is nonetheless ambiguous regarding the extent of plaintiff's impairments. Critically, there is no evidence regarding plaintiff's functional limitations. As addressed in section II, Dr. Kisor's report was not offered retrospectively and the state agency consulting sources found the record insufficient for evaluation. Tr. 62-68, 71-81, 645-48. As a result, it is unclear what plaintiff is capable of doing on a regular and continuing basis despite her impairments.

Although, as discussed in section III, there is evidence of sedation relating to plaintiff's medications, nothing supports her contention at the hearing of impaired focus and inability to multitask. Indeed, plaintiff's "Adult Function Report" and Dr. Kisor's "Fibromyalgia Medical Source Statement" expressly deny any problems with following written or verbal instructions, concentration, or focus. Tr. 191-92, 648. While this evidence post-dates the DLI, plaintiff was on essentially the same medications in 2014 when those reports were generated as she was during the adjudicative period. Tr. 37, 42, 47. Thus, it is also unclear whether plaintiff's RFC should have included mental non-exertional limitations.

In light of these ambiguities in the record, the Court declines to credit plaintiff's testimony as true and instead remands this case for further proceedings. See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[w]hen an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citation and internal quotations omitted). Given the remote date-

last insured and the dearth of medical records surrounding the adjudicative period, use of a medical expert would be helpful in defining the extent of plaintiff's limitations. Accordingly, upon remand, the ALJ must consult a medical expert and, if necessary, reformulate plaintiff's RFC and obtain additional vocational expert testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 11th day of October 2018.

/s/ Jolie A. Russo
_____
Jolie A. Russo
United States Magistrate Judge